<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**March 3, 2014**

**TENTH CIRCUIT**

ANTELOPE COAL COMPANY/RIO
TINTO ENERGY AMERICA,

      Petitioner,

v.

ROLLAND E. GOODIN; DIRECTOR,
OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,

      Respondents.

No. 12-9590

---

**ON PETITION FOR REVIEW OF A DECISION AND ORDER**
**OF THE BENEFITS REVIEW BOARD,**
**UNITED STATES DEPARTMENT OF LABOR**
**(No. 11-0843 BLA)**

---

William S. Mattingly, Jackson Kelly PLLC, Morgantown, West Virginia, appearing for
Petitioner.

Jared L. Bramwell, Kelly & Bramwell, Draper, Utah, appearing for Respondent Rolland
E. Goodin.

Sean Bajkowski, Counsel for Appellate Litigation (M. Patricia Smith, Solicitor of Labor,
Rae Ellen Frank James, Associate Solicitor, and Rita A. Roppolo, Attorney, with him on
the briefs), United States Department of Labor, Office of the Solicitor, Washington, DC,
appearing for Respondent United States Department of Labor.

---

Before **KELLY, McKAY,** and **MATHESON,** Circuit Judges.

**MATHESON**, Circuit Judge.

Rolland E. Goodin worked at surface coal mines for 25 years and smoked cigarettes for more than 40 years. He developed a respiratory condition and filed for benefits under the Black Lung Benefits Act ("BLBA"). 30 U.S.C. §§ 901, *et seq.* An Administrative Law Judge ("ALJ") awarded Mr. Goodin benefits. His employer, Antelope Coal Company/Rio Tinto Energy America ("Antelope"), appealed, and the Department of Labor Benefits Review Board ("Review Board") affirmed the grant of benefits. Antelope filed this petition for review of the Review Board's order.

Antelope's primary argument is that the ALJ wrongly limited its options to rebut a regulatory presumption that Mr. Goodin's work as a coal miner caused his respiratory condition. Specifically, it argues 20 C.F.R. § 718.305(d),[1] a rule limiting the type of evidence that may be used for rebuttal, should not apply to coal mine operators like Antelope. Alternatively, Antelope argues even if the rule applies, the ALJ's findings and explanation concerning the cause of Mr. Goodin's disability were incomplete. Exercising jurisdiction under 33 U.S.C. § 921(a), we deny Antelope's petition.

## I. BACKGROUND

We begin with the relevant statutes and regulations and then turn to the facts and

---

[1] A revision of this regulation became effective October 25, 2013. *See infra* Part I.A.5. We apply the revised version for reasons noted later in this opinion. *See infra* Part II.B. Unless otherwise indicated, all citations to the C.F.R. are to the 2013 regulations.

procedural history of Mr. Goodin's case.

## A. *Legal Background*

Congress enacted the BLBA in 1969 to compensate miners who develop pneumoconiosis—black lung disease. The BLBA provides benefits to coal miners who become totally disabled from pneumoconiosis. Five parts of the BLBA and regulations are particularly relevant here.

### 1. **Elements of a Claim**

To obtain benefits under the BLBA, a claimant must prove: (1) he or she suffers from pneumoconiosis; (2) the pneumoconiosis arose out of coal mining employment; (3) he or she is totally disabled due to a respiratory or pulmonary impairment; and (4) pneumoconiosis is a substantially contributing cause of his or her total disability. *See* 20 C.F.R. §§ 725.202(d)(2), 718.204(c)(1); 30 U.S.C. §§ 902, 921; *Energy West Mining Co. v. Oliver*, 555 F.3d 1211, 1214 (10th Cir. 2009).

### 2. **Pneumoconiosis Defined**

The BLBA recognizes two types of pneumoconiosis: clinical and legal. Clinical pneumoconiosis refers to diseases the medical community recognizes as pneumoconiosis, which includes "conditions characterized by . . . the fibrotic reaction of the lung tissue to . . . deposition [of particulate matter] caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1).

Legal pneumoconiosis, added in 1978, 30 U.S.C. § 902(b), is "any chronic lung

-3-

disease or impairment and its sequelae[2] arising out of coal mine employment.  This

definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary

disease arising out of coal mine employment."  20 C.F.R. § 718.201(a)(2).  This

encompasses "a broader class of lung diseases that are not pneumoconiosis as the term is

used by the medical community."  *Andersen v. Dir., OWCP*, 455 F.3d 1102, 1104 (10th

Cir. 2006).  "Arising out of coal mine employment" means the disease or impairment is

"significantly related to, or substantially aggravated by, dust exposure in coal mine

employment."  20 C.F.R. § 718.201(b).

3.  **The 15-year Presumption**

The BLBA created a presumption that a miner is disabled due to pneumoconiosis

when he or she has worked for 15 years in underground coal mines or substantially

similar conditions and is totally disabled from a respiratory or pulmonary condition (the

"15-year presumption").  In other words, a miner who proves 15 years of coal mine work

and total disability is entitled to a presumption that the remaining elements of his claim

are established.  This presumption expired in 1982.  30 U.S.C. § 921(c)(4) (2006).

In 2010, Congress adopted the Byrd Amendments to the BLBA as part of the

Affordable Care Act ("ACA"), Pub. L. No. 111–148, § 1556, 124 Stat. 119, 260 (2010).

The amendments reinstated the 15-year presumption for claims filed after January 1,

---

[2] Sequelae is the "aftereffect of disease, condition, or injury" or its "secondary result."  Merriam-Webster.com, http://www.merriam-webster.com/dictionary/sequela (last accessed Dec. 9, 2013).

2005.  *See* 30 U.S.C. § 921(c)(4) (2012).[3]

Section 921 provides that the Secretary of Labor can rebut the 15-year presumption only by proving (1) the claimant does not have pneumoconiosis, or (2) the claimant's impairment "did not arise out of, or in connection with, employment in a coal mine."  *Id.* § 921(c)(4).  In 1976, the Supreme Court ruled the rebuttal limitations apply only to the Secretary and do not apply to coal mine operators.  *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 34-37 (1976).[4]

---

[3] The statute reads in relevant part:

> [I]f a miner was employed for fifteen years or more in one or more underground coal mines, and if . . . a chest roentgenogram [(x-ray)] submitted in connection with such miner's . . . claim . . . is interpreted as negative . . . and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis. . . . The Secretary [of Labor] shall not apply . . . the requirement . . . that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

30 U.S.C. § 921(c)(4).  We note that a claimant with a positive x-ray is eligible for a different presumption.  *Id.* at § 921(c)(3).

[4] The parties disagree whether *Usery* is still valid law in light of subsequent amendments to the BLBA.  We do not resolve this question because we conclude that Mr. Goodin would have prevailed even without the rebuttal limitations.

4. **Rule-out Standard**

The U.S. Department of Labor (the "Department") maintains that a rule-out standard applies to the second method of rebuttal, requiring proof that rules out any connection between the claimant's disability and coal mine employment. *See* Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits, 78 Fed. Reg. 59,101, 59,107 (Sept. 25, 2013). Some courts have agreed. *See, e.g.*, *Peabody Coal Co. v. Hill*, 123 F.3d 412, 417-18 & n.9 (6th Cir. 1997); *Rose v. Clinchfield Coal Co.*, 614 F.2d 936, 939 (4th Cir. 1980). This standard derives from 20 C.F.R. § 718.305(d) (2010), which, before its revision in 2013, stated, "Where the cause of death or total disability *did not arise in whole or in part* out of dust exposure in the miner's coal mine employment . . . the presumption will be considered rebutted." *Id.* (emphasis added).[5]

Although we have not addressed whether the rule-out standard applies to rebuttal of the 15-year presumption, we have held that a rule-out standard applied to a similar presumption of pneumoconiosis arising from proof of total disability and 10 years of coal mine employment. *See Rosebud Coal Sales Co. v. Wiegand*, 831 F.2d 926, 928-29 (10th Cir. 1987). That presumption was based on a now-defunct interim regulation that contained identical language to § 718.305(d) (2010). *See id.* To rebut that presumption,

---

[5] As discussed below, a final rule effective October 25, 2013, changed the language of this provision. But the revised language has the same effect—requiring the rebutting party to establish that "no part of the miner's . . . disability was caused by pneumoconiosis . . . ." 20 C.F.R. § 718.305(d)(1)(ii).

we said employers must show that "total disability or death of the miner *did not arise in whole or in part* out of coal mine employment." *Id.* at 928 (emphasis added) (quoting interim regulation 20 C.F.R. § 727.203(b)(3) (1987)). The employer must "rule out *any* relationship between the disability and the coal mine employment." *Mangus v. Dir., OWCP*, 882 F.2d 1527, 1529 (10th Cir. 1989) (citing *Rosebud Coal Sales*, 831 F.2d at 928)). We see no reason to interpret § 718.305(d) (2010) or the revised § 718.305(d)(1)(ii) (2013) any differently and hold the rule-out standard applies here. *See Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1071 n.5 (6th Cir. 2013) (noting the rule-out standard is consistent with the revised regulation).

5. **The October 25, 2013 Final Rule**

After Congress enacted the ACA, the Department issued a Notice of Proposed Rulemaking to implement the Byrd Amendments. *See* Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits, 77 Fed. Reg. 19,455 (proposed Mar. 30, 2012). The comment period closed May 29, 2012. *Id.* at 19,456. The Department issued its Final Rule on September 25, 2013, with an effective date of October 25, 2013. *See* Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits, 78 Fed. Reg. 59,101

(Sept. 25, 2013).[6]  The Final Rule revised two sections of the regulations that are relevant

to this case:  20 C.F.R. § 718.305(b)(2),[7] which defines when working conditions are

substantially similar to underground mining; and § 718.305(d)(1),[8] which governs the

permissible methods of rebuttal.

## B. *Factual and Procedural History*

Mr. Goodin worked at surface coal mines, including the Antelope Coal Mine in

Wyoming, from 1981 to 2006, when he retired because of respiratory health issues.  On

May 14, 2007, Mr. Goodin applied for BLBA benefits.  As Mr. Goodin's last employer,

---

[6] Mr. Goodin filed his claim in 2007, after the January 1, 2005 filing date required
by the Byrd Amendments.  The relevant procedural history in this case—the ALJ's
August 2011 decision, the Review Board's September 2012 ruling, and Antelope's
November 2012 notice of appeal to this court—took place after the Byrd Amendments
were enacted, but before the Department issued its Final Rule.

[7] This provision states, "The conditions in a mine other than an underground mine
will be considered 'substantially similar' to those in an underground mine if the claimant
demonstrates that the miner was regularly exposed to coal-mine dust while working
there."  20 C.F.R. § 718.305(b)(2).

[8] This provision states,

In a claim filed by a miner, the party opposing entitlement may rebut the
presumption by--
      (i) Establishing both that the miner does not, or did not, have:
          (A) Legal pneumoconiosis as defined in § 718.201(a)(2); and
          (B) Clinical pneumoconiosis as defined in § 718.201(a)(1),
          arising out of coal mine employment (see § 718.203); or
      (ii) Establishing that no part of the miner's respiratory or pulmonary
      total disability was caused by pneumoconiosis as defined in
      § 718.201.

20 C.F.R. § 718.305(d)(1).

Antelope is the named operator for his claim. A Department ALJ heard his case in Casper, Wyoming on October 20, 2010.

1. **Evidence Presented to the ALJ**

At the hearing, Mr. Goodin testified in person about his working conditions at surface coal mines in the various positions he held, which included warehouse worker for four to five years, equipment operator for 11-12 years, and equipment oiler in the mine pit for nine years. We will discuss Mr. Goodin's working conditions in more detail later in the opinion. He also testified about his forty-year smoking history, stating that he started smoking in his 20s, tried to quit multiple times, and successfully quit in 2004 or 2005. He smoked, on average, a pack of cigarettes each day.

The parties introduced conflicting medical evidence regarding (1) readings of chest x-rays and CT scans; (2) results from pulmonary function tests and arterial blood gas studies; (3) interpretations of patient history; (4) statistical reasoning; and (5) diagnoses.

a. *Mr. Goodin's Medical Evidence*

Mr. Goodin submitted Dr. Andras Bodoni's and Dr. Cecile Rose's medical reports and deposition testimony, Dr. Donald Smith's treatment records, and additional x-ray and CT scan interpretations.

Dr. Bodoni, board-certified in internal medicine, examined Mr. Goodin to satisfy the Department's obligation under 30 U.S.C. § 923(b) to provide each claimant-miner with "an opportunity to substantiate his or her claim by means of a complete pulmonary

evaluation." *See* 30 U.S.C. § 923(b). Dr. Bodoni diagnosed Mr. Goodin with pneumoconiosis from exposure to coal dust and with total disability from a combination of pneumoconiosis and another respiratory disease. Appx., Vol. I at 17. He based this diagnosis on a physical examination, patient history, and his positive x-ray reading. *Id.* at 41. Dr. Bodoni opined that although Mr. Goodin had other respiratory conditions, none of them constituted the entire disability without pneumoconiosis. *Id.* Dr. Bodoni testified it was impossible to tell the difference in impact between coal mine exposure and smoking. *Id.* at 32-33.

Dr. Rose—board-certified in pulmonary medicine, general preventive/occupational medicine, and internal medicine, as well as a B-reader[9]—examined Mr. Goodin at his request. She based her opinion on a physical examination, patient history, and a positive x-ray and CT scan. Appx., Vol. I at 78-79. She also reviewed the medical records and opinions from Dr. Bodoni and Antelope's primary medical experts. She concluded Mr. Goodin was totally disabled from his respiratory condition, which resulted, at least in part, from his previous exposure to coal mine dust. *Id.* at 84. Dr. Rose recognized that multiple factors, including smoking, caused Mr. Goodin's respiratory condition, but still concluded that coal mining was a substantially contributing factor. *Id.* at 83-84. Dr. Rose disagreed with Antelope's experts and filed a supplemental report after their depositions to rebut their testimony.

---

[9] A B-reader is a doctor who is certified to read x-rays for pneumoconiosis. Appx., Vol. II at 276 n.8.

Dr. Smith was Mr. Goodin's treating physician. Mr. Goodin submitted Dr. Smith's treatment notes, which said, "The patient has had abnormal lung function for years and probably his recent exposures caused a mild exacerbation. The radiographic picture is certainly not typical for Coal Worker's pneumoconiosis but the patient may have a slowly active fibrosis in addition to the emphysema." Appx., Vol. II at 267.

Mr. Goodin submitted additional interpretations of his tests. Dr. Afzal Ahmed examined three admissible x-rays[10] and found opacities in all zones indicating pneumoconiosis. *Id.* at 277. Dr. David Lynch reviewed a 2010 CT scan that Dr. Rose ordered. *Id.* at 279. Dr. Lynch determined that although the CT scan did "not show typical features of coal workers [sic] pneumoconiosis, it could certainly be related to coal dust exposure. Alternatively, this could be secondary to cigarette smoking. Moderate emphysema may be related to coal dust exposure and/or smoking." Appx., Vol. I at 93.

b. *Antelope's Medical Evidence*

Antelope submitted Drs. Lawrence Repsher's and Robert Farney's reports and deposition testimony as well as additional interpretations of Mr. Goodin's x-rays and CT scans.

Dr. Repsher, board-certified in internal medicine and pulmonary disease and a B-reader, examined Mr. Goodin at Antelope's request. He concluded that Mr. Goodin's respiratory disease was chronic obstructive pulmonary disease ("COPD") due to heavy

---

[10] Dr. Ahmed reviewed a fourth x-ray, but it exceeded the number of x-rays Mr. Goodin could submit and the ALJ did not consider it.

smoking, noting that Mr. Goodin's chest x-ray showed no evidence of pneumoconiosis. Appx., Vol. II at 262. He based his opinion on Mr. Goodin's chest x-ray and a CT scan showing opacities consistent with smoking but not typical of pneumoconiosis. *Id.* He also explained that although a few coal miners will develop COPD from coal mine dust, statistically "in this individual coal miner, to an overwhelming probability, any detectable COPD would be the result of cigarette smoking and/or asthma, but not the result of the inhalation of coal mine dust." Appx., Vol. I at 48. He thought Dr. Rose's pulmonary function tests were not reliable and probably invalid because the results were unlikely. Dr. Repsher also concluded Mr. Goodin's pulmonary capacity is likely sufficient to perform his last coal mining job, and therefore Mr. Goodin is not totally disabled. Appx., Vol. II at 275.

Dr. Farney, board-certified in internal medicine, pulmonary medicine, and sleep medicine, examined Mr. Goodin at Antelope's request. Unlike Dr. Repsher, he agreed with Dr. Rose that Mr. Goodin is totally and permanently disabled, but stated that Mr. Goodin does not have pneumoconiosis. Appx., Vol. II at 264. Instead, he diagnosed Mr. Goodin with COPD from smoking. *Id.* He stated that coal dust exposure can cause COPD, but the degree of COPD from coal dust is usually mild unless the dust exposure was high, in which case a chest x-ray would be abnormal. *Id.* at 264-65. Dr. Farney ruled out pneumoconiosis from coal dust exposure because "the risk of developing coal worker's [pneumoconiosis] is less in surface mining," Appx., Vol. I at 64, smoking has a higher risk of respiratory conditions than coal dust exposure, and Mr. Goodin's chest

-12-

x-ray was negative for pneumoconiosis.

Antelope also submitted the following interpretations of Mr. Goodin's tests. Dr. Cristopher Meyer interpreted one x-ray (which Dr. Ahmed also reviewed) as negative for pneumoconiosis. Appx., Vol. II at 277. Dr. Jerome Wiot interpreted another x-ray as also negative for pneumoconiosis. *Id.* Dr. Wiot analyzed a 2008 CT scan, concluding, "There is no evidence of coal worker's pneumoconiosis. There is mild emphysema. There is mild . . . fibrosis . . . [that] is not a manifestation of coal dust exposure." *Id.* at 279. Finally, Dr. Meyer reviewed Mr. Goodin's 2010 CT scan, concluding that although "there are many causes of pulmonary fibrosis, th[e] pattern is not typical of coal worker's pneumoconiosis . . . ." Appx., Vol. I at 90-91.[11]

* * * *

In summary, three of the four doctors, Drs. Bodoni, Rose, and Repsher, agreed Mr. Goodin was totally disabled. They disagreed as to the cause. Mr. Goodin's experts, Drs. Bodoni and Rose, concluded his disability resulted, at least in part, from pneumoconiosis due to coal mining. Antelope's experts, Drs. Repsher and Farney, concluded Mr. Goodin's disability may have resulted from COPD caused by heavy smoking. They based this conclusion on test results not typical for pneumoconiosis and Mr. Goodin's health history. They also opined that Mr. Goodin's work at a surface mine made

---

[11] Antelope argues the ALJ improperly failed to consider Dr. Meyer's interpretation of this CT scan because the ALJ did not specifically mention it in his analysis. This issue is addressed below.

pneumoconiosis statistically improbable because (1) most miners will not develop chronic COPD from coal dust exposure, and (2) because the risk of developing pneumoconiosis from surface mining is less than from underground mining due to lower coal dust exposure.

## 2.  **The ALJ's Decision**

The ALJ found Mr. Goodin (1) had worked for more than 15 years in surface mining conditions substantially similar to underground mining and (2) was totally disabled from his respiratory impairment.  Appx., Vol. II at 271, 275.  These findings established the 15-year presumption.  The ALJ stated Antelope had the burden under § 921 to rebut this presumption by a preponderance of the evidence showing (1) Mr. Goodin did not have pneumoconiosis or (2) his disability did not arise out of coal mine employment.  *Id.* at 276.

The ALJ held that Antelope had failed to rebut the presumption and awarded Mr. Goodin BLBA benefits.  *Id.* at 283.  He found the x-ray evidence to be in equipoise and Dr. Rose's report and conclusions to be persuasive.[12]  *Id.* at 278, 281, 283.  He found Drs. Repsher's and Farney's statistical reasoning unpersuasive because they failed to show why Mr. Goodin was not within the subgroup of individuals who suffer from pneumoconiosis caused by surface mining conditions or why coal dust could not have aggravated the COPD the doctors attributed to smoking.  *Id.* at 282-83.  Accordingly, the

_____

[12] The ALJ did not place much weight on Dr. Bodoni's conclusions due to his relative lack of credentials.

ALJ concluded, Antelope "has not rebutted the presumption . . . by showing a preponderance of the evidence that [Mr. Goodin] does not have pneumoconiosis" or that the "pneumoconiosis did not arise out of his coal mine employment . . . ." *Id.* at 283.

### 3. **Subsequent Proceedings**

The Benefits Review Board affirmed the ALJ's decision on September 27, 2012. It determined the ALJ had applied the proper legal standard, substantial evidence supported his factual findings, and the decision contained no reversible error.

Antelope petitioned this court, challenging the legal standard applied to its rebuttal evidence, the test for determining substantial similarity to underground coal mining conditions, the completeness of Mr. Goodin's Department-provided pulmonary exam, the ALJ's consideration of medical evidence, and the completeness of the ALJ's analysis.

On the day of oral argument, September 25, 2013, the Department issued its Final Rule implementing and interpreting statutory changes made by the ACA, which became effective on October 25, 2013. The parties submitted supplemental briefing on the applicability and impact of the Final Rule on this case.

## II. **DISCUSSION**

### A. *Standard of Review*

For questions of fact, we determine whether the Review Board "properly concluded that the ALJ's decision was supported by substantial evidence." *Hansen v.*

*Dir., OWCP*, 984 F.2d 364, 368 (10th Cir. 1993).[13] "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

We do not reweigh the evidence, but instead ask if, based on the record as a whole, substantial evidence is present to support the ALJ's decision. *See Energy West Min. Co. v. Oliver*, 555 F.3d 1211, 1217 (10th Cir. 2009). "[T]he task of weighing conflicting medical evidence is within the sole province of the ALJ." *Hansen*, 984 F.2d at 368. "[W]here medical professionals . . . disagree[], the trier of fact is in a unique position to determine credibility and weigh the evidence." *Id.* at 370.

For questions of law, we review the Review Board's decision de novo. *See Mangus v. Dir., OWCP*, 882 F.2d 1527, 1530 (10th Cir. 1989). We give no deference to the Review Board's interpretation, *see Lukman v. Dir., OWCP*, 896 F.2d 1248, 1251 (10th Cir. 1990), "however, we give 'considerable weight' to the Department['s] . . . construction of the statute it is entrusted to administer and 'substantial deference' to the agency's reasonable interpretation of its own regulations," *Andersen*, 455 F.3d at 1103 (citations omitted), unless such interpretation is "plainly erroneous or inconsistent with the regulation," *Mullins Coal Co. v. Dir., OWCP*, 484 U.S. 135, 159 (1987); *see also Auer v. Robbins*, 519 U.S. 452, 461 (1997).

---

[13] Although we are formally reviewing the Review Board's decision, because the standard of review for questions of fact requires us to determine whether the ALJ's decision is supported by substantial evidence, we focus on the ALJ's decision and analysis.

B. *Final Rule Applicability*

Before we discuss the ALJ's and Review Board's determinations, we first address whether relevant provisions of the Final Rule, which became effective October 25, 2013, apply to this case. They do.

The relevant provisions concern (1) how to establish the 15-year presumption by showing above-ground mining conditions are substantially similar to underground mine conditions, 20 C.F.R. § 718.305(b)(2), and (2) how to rebut the presumption, 20 C.F.R. § 718.305(d)(1).[14] These provisions apply because they do not change existing law and are substantially consistent with prior regulations and agency practices. *See Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 859 (D.C. Cir. 2002); *Farmers Tel. Co., Inc. v. FCC*, 184 F.3d 1241, 1250 (10th Cir. 1999) (stating an interpretive rule may operate retrospectively when it "merely clarifies or explains existing law or regulations").

"If a new regulation is substantively consistent with prior regulations or prior agency practices, and has been accepted by all Courts of Appeals to consider the issue, then its application to pending cases" is proper. *Nat'l Mining*, 292 F.3d 860. Here, neither provision changes the substantive law because each merely clarifies the Department's position and conforms to circuit court cases.

Section 718.305(b)(2) addresses when a surface miner's working conditions are substantially similar to underground mining working conditions. The only circuit to

---

[14] The rules are quoted in full in footnotes 7 and 8, *supra*.

-17-

address this issue has long held that surface miners do not need to provide evidence of underground mining conditions to compare with their own working conditions. *See, e.g.*, *Freeman United Coal Mining Co. v. Summers*, 272 F.3d 473, 479 (7th Cir. 2001); *Blakley v. Amax Coal Co.*, 54 F.3d 1313, 1319 (7th Cir. 1995); *Dir., OWCP v. Midland Coal Co.*, 855 F.2d 509, 512 (7th Cir. 1988). These decisions validate the Department's longstanding position that consistently dusty working conditions are sufficiently similar to underground mining conditions. *See, e.g.*, *Midland Coal*, 855 F.2d at 511-12. The revised regulation codifies that interpretation by making regular exposure to coal mine dust the standard to determine substantial similarity of surface working conditions to those in underground mines. *See* 20 C.F.R. § 718.305(b)(2).

Similar reasoning applies to revised § 718.305(d)(1), which outlines the permissible methods of rebutting the 15-year presumption. The changes to § 718.305(d)(1) also comport with the Department's ongoing interpretation and do not substantively change the law. The original regulation required, for rebuttal, proof the disability did not arise from coal mine employment. [15] *See, e.g.*, *Blakley*, 54 F.3d 1313 at

---

[15] The original language states, "The presumption may be rebutted only by establishing that the miner does not, or did not have pneumoconiosis, or that his or her respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." 20 C.F.R. § 718.305(a) (2010).

The new regulation states, "In a claim filed by a miner, the party opposing entitlement may rebut the presumption by . . . (i) [e]stablishing both that the miner does not, or did not, have . . . [l]egal pneumoconiosis . . . [and c]linical pneumoconiosis . . . arising out of coal mine employment . . . or (ii) [e]stablishing that no part of the miner's

Continued . . .

-18-

1319. The revised regulation requires proof that pneumoconiosis, as defined in the statute, did not cause any part of the disability. *See* 20 C.F.R. § 718.305(d)(1). Because the statute defines pneumoconiosis as "arising out of coal mine employment," *see* 20 C.F.R. § 718.201(a), the practical effect of the revised rule is the same, and it therefore applies to this case.

### C. *Did the ALJ Err in Finding that Mr. Goodin Is Entitled to the 15-Year Presumption?*

The ALJ determined and the Review Board affirmed that Mr. Goodin is entitled to the 15-year presumption because he (1) worked for at least 15 years in conditions substantially similar to underground mining and (2) was totally disabled from a respiratory or pulmonary impairment. *See* 30 U.S.C. § 924(c)(4). Substantial evidence supported this determination.

### 1. **15 Years Working in Conditions Substantially Similar to Underground Coal Mining**

The ALJ found that Mr. Goodin worked as a coal miner for at least 25 years in surface mining. The question in this petition is whether the ALJ properly determined that Mr. Goodin's surface mining working conditions were substantially similar to those in underground mining.

---

Cont.

respiratory or pulmonary total disability was caused by pneumoconiosis . . . ." 20 C.F.R. § 718.305(d)(1) (2013).

Mr. Goodin testified he held three different jobs while working in the mines—warehouse worker, equipment operator, and equipment oiler. Appx., Vol. I at 122-23. He started as a warehouse worker for four to five years and then worked as an equipment operator for three years. *Id.* As an equipment operator, he drove a truck with an attached shovel, drove a water truck, and operated a machine called a scraper. *Id.* at 123. Although he was located in the cabs of the vehicles, and some trucks had air filtration, "there was no way [to keep the dust out], even when you closed the doors, it was just like a cloud of dust inside the cabs." *Id.* at 148. He also described that the truck was "always kicking up a puff of dust," and the dust would just hang in the air. *Id*. at 127, 148. When the wind blew, it was "like a sand blaster sometimes." *Id*. at 132. His duties frequently required him to get in and out of the equipment and work outside for a period of time. *Id.* at 125. Mr. Goodin next worked as an equipment oiler for nine years. During this time, he serviced the equipment exclusively in the mine pit while the other equipment was running, "so it would get pretty dusty out there . . . ." *Id*. at 130. Finally, he returned to working as an equipment operator for eight to nine years.

The ALJ said Mr. Goodin had the burden of showing substantial similarity between his surface and underground mining conditions, but "must only establish that he was exposed to sufficient coal dust in his surface mine employment." Appx., Vol. II at 270 (quoting *Blakley*, 54 F.3d at 1319); *see also Summers*, 272 F.3d at 480.

The ALJ found Mr. Goodin to be a credible witness and said, "Based on my experience with the testimony of underground miners, I find [Mr. Goodin's] description

-20-

of the conditions in the strip mines where he worked to be substantially similar." Appx., Vol. II at 271.[16] Because Mr. Goodin worked as an equipment operator and oiler for more than fifteen years, the ALJ did not consider the working conditions in the warehouse.

The ALJ's decision and most of Antelope's arguments were based on the previous version of § 718.305(b)(2). Antelope argues that the "substantial similarity" standard under that regulation, without additional guidance, is arbitrary and gives the Review Board and this court no meaningful basis to evaluate the ALJ's decision. Although we find some merit in this argument, we conclude the revised regulation provides such guidance.

The revised regulation states, "The conditions in a mine other than an underground mine will be considered 'substantially similar' to those in an underground mine if the claimant demonstrates that the miner was regularly exposed to coal-mine dust while working there." 20 C.F.R. § 718.305(b)(2). It instructs ALJs to find substantial similarity if the miner was regularly exposed to coal dust. The clarified standard— regular dust exposure—provides sufficient guidance to measure similarity.

Under this standard, Antelope argues the evidence fails to show that Mr. Goodin's surface mine working conditions were substantially similar to those in an underground

---

[16] The ALJ erred in basing his opinion on his personal experience with the testimony of underground miners. This error is harmless, however, because the evidence the ALJ properly accepted was sufficient to meet the "regular exposure" standard under the revised regulation. *See* 20 C.F.R. § 718.305(b)(2).

mine.  We do not reweigh the evidence, but merely ask if there is substantial evidence to support the ALJ's determination.  *See Energy West*, 555 F.3d at 1217.

Mr. Goodin testified at length about the working conditions in his various positions.[17]  His testimony provided substantial evidence of regular exposure to coal dust. We agree with the Review Board that there was substantial evidence to support the ALJ's finding that Mr. Goodin worked for at least 15 years in surface mining conditions substantially similar to underground mining.

## 2.  **Total Disability From a Respiratory or Pulmonary Condition**

The ALJ determined that Mr. Goodin is totally disabled from a respiratory condition.  Appx., Vol. II at 275.  Although Antelope presented the ALJ with evidence to rebut Mr. Goodin's disability, it does not, as the Review Board noted, challenge the ALJ's determination of total disability.  *See id.* at 287 n.3.

\* \* \* \*

For the foregoing reasons, we conclude the ALJ did not err in finding that Mr. Goodin is entitled to the 15-year presumption.  The Review Board properly concluded

---

[17] Antelope does not dispute Mr. Goodin's recounting of his working conditions. It contends the air filter in the trucks protected Mr. Goodin from exposure to enough dust to meet the standard. The evidence showed the dust was only kept out in one truck, which Mr. Goodin only operated about ten percent of his time as an equipment operator.  Even in that truck, Mr. Goodin testified there was still dust in the cab because he was required to get in and out of the truck frequently throughout the day.  Appx., Vol. I at 147-48.  The ALJ, in weighing this evidence, concluded Mr. Goodin was regularly exposed to coal dust even inside the trucks.  Appx., Vol. II at 271.  We find substantial evidence to support this conclusion.

there was sufficient evidence to support the ALJ's determination.

D. *Did the ALJ Err in Finding that Antelope Did Not Rebut the Presumption?*

The ALJ correctly stated that Mr. Goodin had the burden to establish by a preponderance of the evidence that "(1) he suffers from pneumoconiosis; (2) arising out of coal mine employment; (3) he is totally disabled; and (4) his total disability is caused by pneumoconiosis." Appx., Vol. II at 256; *see* 20 C.F.R. §§ 725.202(d)(2), 718.204(c)(1). The ALJ determined Mr. Goodin was totally disabled (element (3)) and the 15-year presumption satisfied the remaining three elements ((1), (2), and (4)).

Section 921(c)(4) states the Secretary may rebut the 15-year presumption only two ways: by proving (1) the claimant does not have pneumoconiosis (legal and clinical), or (2) the claimant's impairment "did not arise out of, or in connection with, employment in a coal mine." 30 U.S.C. § 921(c)(4). The Department has applied this limitation to both the Secretary and mine operators like Antelope, and it has enacted regulations reflecting this interpretation. *See* 20 C.F.R. 718.305(d)(1).

We first review (1) whether there is substantial evidence to support the ALJ's conclusion that Antelope failed to rebut the 15-presumption under these two methods. We conclude there was. We then address (2) whether Mr. Goodin can prevail even if the ALJ erred in determining that an operator such as Antelope is limited to the two rebuttal methods. We conclude Antelope failed to rebut Mr. Goodin's claim even without the rebuttal limitations and therefore any error in applying the rebuttal limitations was harmless.

1. **Did Antelope Rebut the Presumption under the Rebuttal Limitations?**

We review the ALJ's determination that Antelope failed to rebut the presumption under the substantial evidence standard. *See Hansen*, 984 F.2d at 368. This analysis is divided between the two rebuttal limitations—the presence of pneumoconiosis and whether pneumoconiosis caused the total disability.

a. *Did Antelope rebut that Mr. Goodin has pneumoconiosis?*

The ALJ concluded Antelope failed to rebut the presumption that Mr. Goodin suffered from legal pneumoconiosis because the medical tests were inconclusive and Antelope's experts were unpersuasive.[18]

First, as to the medical tests, the ALJ found the x-ray evidence "in equipoise for the existence of pneumoconiosis" and "not sufficient for [Antelope] to show that [Mr. Goodin] does not have pneumoconiosis." Appx., Vol. II at 278. Although Mr. Goodin's "CT scan[s were] not typical of pneumoconiosis," they did show that Mr. Goodin "does have some lung disease" and Antelope failed to show why this lung disease was not pneumoconiosis because Antelope's experts were not persuasive. *Id.* at 283.

---

[18] As stated above, legal pneumoconiosis is "any chronic lung disease or impairment and its sequelae *arising out of coal mine employment*." 20 C.F.R. § 718.201(a)(2) (emphasis added). "[A] disease 'arising out of coal mine employment' includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." *Id.* § 718.201(b).

Clinical pneumoconiosis includes "those diseases recognized by the medical community as pneumoconiosis" characterized by the "deposition [of particulate matter] *caused by dust exposure in coal mine employment*." *Id.* § 718.201(a)(1) (emphasis added).

Second, as to Antelope's experts, Dr. Repsher stated that "to an overwhelming probability, any detectable COPD would be the result of cigarette smoking and/or asthma, but not the result of the inhalation of coal mine dust." *Id.* at 263. Dr. Farney's main reason that smoking and not coal dust caused Mr. Goodin's lung disease "is the absence of a significant risk factor for coal dust. He worked on a surface mine, which statistically has less risk." *Id.* at 266. The ALJ found the Antelope's experts' reliance on statistical probabilities undermined their ultimate conclusion that Mr. Goodin did not have pneumoconiosis because they did not show why Mr. Goodin is not among the cohort of those who suffer COPD from surface coal mining. *Id.* at 282-83. Antelope did not show that Mr. Goodin did not have legal pneumoconiosis. It therefore did not rebut the presumption.

We do not reweigh the evidence on appellate review, *see Energy West*, 555 F.3d at 1217, and conclude the record adequately supports the ALJ's determination.

b. *Did Antelope rebut that pneumoconiosis caused any part of Mr. Goodin's disability?*

The ALJ, applying the rule-out standard, concluded Antelope did not show that "no part" of Mr. Goodin's respiratory disability "was caused by pneumoconiosis." 20 C.F.R. § 718.305(d)(1)(ii); *see* Appx., Vol. II at 282-83. To rebut the presumption using this method, Antelope needed to rule out any connection between Mr. Goodin's disability and his pneumoconiosis. The relevant medical evidence is the same evidence the ALJ considered in determining whether Antelope rebutted the presumption that Mr. Goodin

-25-

has pneumoconiosis.

Although the ALJ did not specifically analyze disability causation, he made findings showing that Antelope did not rebut the presumption.[19] The ALJ found that Mr. Goodin suffered from a totally disabling respiratory condition. Appx., Vol. II at 276. He found persuasive Dr. Rose's conclusion that Mr. Goodin was totally disabled from his respiratory condition, which, she said, resulted, at least in part from his previous exposure to coal mine dust. *Id.* at 283. Dr. Rose recognized that multiple factors, including smoking, caused Mr. Goodin's lung condition, but she still concluded that coal mining was a substantially contributing factor. *Id.* at 260-61.

Conversely, the ALJ found unpersuasive Antelope's evidence that smoking alone caused Mr. Goodin's condition. *Id.* at 282-83. The ALJ further said that even if Antelope's evidence had persuaded him that smoking caused Mr. Goodin's condition, Antelope still had failed to show that coal dust had not aggravated or materially worsened Mr. Goodin's condition. *Id.* at 283 ("Both doctors simply eliminate coat dust exposure as a cause, but do not adequately explain why it could not have contributed to [Mr. Goodin's] lung disease in addition to his history of smoking."); *see* 20 C.F.R. § 718.201(b).

Finally, the ALJ found that Antelope had "not rebutted the presumption by showing [Mr. Goodin's] pneumoconiosis did not arise out of his coal mine employment

---

[19] *See Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1061-62 (6th Cir. 2013) (holding ALJ's "brief" reasoning on disability causation was sufficient).

-26-

as the definition of legal pneumoconiosis subsumes that finding." Appx., Vol. II at 283.

Because (1) the ALJ found that Mr. Goodin has legal pneumoconiosis, which Antelope failed to rebut; (2) legal pneumoconiosis by definition arises from exposure to dust in coal mining employment; and (3) Dr. Rose concluded that Mr. Goodin's total disability resulted in part from coal dust exposure, Antelope failed to rule out any connection between Mr. Goodin's pneumoconiosis and his total disability.[20]

We conclude the record supports the ALJ's decision and the Review Board's affirmance.

## 2. **Was the ALJ's Application of the Rebuttal Limitations Harmless Error?**

Antelope argues the rebuttal limitations (1) may not be applied to operators, and (2) impermissibly restricted its ability to prove and argue that coal mining did not substantially contribute to Mr. Goodin's disability. We do not decide whether the rebuttal limitations apply to Antelope[21] because any error in the ALJ's invocation of the rebuttal limitations was harmless. *See* 5 U.S.C. § 706(2)(F) ("[D]ue account shall be

---

[20] Antelope argues the ALJ did not make a finding and explanation as to whether it successfully rebutted the presumption that the disability arose from coal mining employment. As explained above, although the ALJ did not provide a separate analysis for this particular element, the reasoning and evidentiary analysis throughout the ALJ's opinion supports the ALJ's holding that the presumption was not rebutted. This fulfills the ALJ's duty of explanation under the Administrative Procedure Act ("APA") because we can "discern what the ALJ did and why he did it." *Gunderson v. U.S. Dep't of Labor*, 601 F.3d 1013, 1022 (10th Cir. 2010) (quotations omitted).

[21] The Sixth Circuit has addressed this issue. *See Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1069-70 (6th Cir. 2013) (citing *Morrison v. Tenn. Consol. Coal Co.*, 644 F.3d 473, 479 (6th Cir. 2011) (holding the rebuttal limitations applied to the employer)).

taken of the rule of prejudicial error."); *Hillsdale Envtl. Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, 702 F.3d 1156, 1165 (10th Cir. 2012) ("[E]ven if an agency violates the APA, its error does not require reversal unless a plaintiff demonstrates prejudice resulting from the error."); *Gunderson v. U.S. Dep't of Labor*, 601 F.3d 1013, 1022 (10th Cir. 2010) ("[W]e may overturn the ALJ's decision only if the error . . . prejudicially affected a substantial right of a party." (quotations omitted)).

The ALJ did not limit Antelope's presentation of rebuttal evidence, and the record contains substantial evidence that Antelope did not rebut the four elements of Mr. Goodin's prima facie case. *See Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1061 n.4 (6th Cir. 2013) (stating the ALJ did not restrict the employer's rebuttal methods and the employer could not otherwise rebut the presumption); *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 555-56 (4th Cir. 2013) (same).[22]

Despite the ALJ's finding that Mr. Goodin was entitled to the 15-year presumption and that the rebuttal limitations applied, the ALJ still allowed Antelope to present rebuttal evidence without restriction, and Antelope does not contest otherwise. The ALJ did not even decide that the 15-year presumption applied until all evidence from both parties had been submitted. Antelope's evidence was insufficient to rebut any of the presumptively established elements of Mr. Goodin's claim.

---

[22] As stated above, the four elements of Mr. Goodin's prima facie case are, "(1) he suffers from pneumoconiosis; (2) arising out of coal mine employment; (3) he is totally disabled; and (4) his total disability is caused by pneumoconiosis." Appx., Vol. II at 256; *see* 20 C.F.R. §§ 725.202(d)(2), 718.204(c)(1).

First, as to Mr. Goodin suffering from pneumoconiosis, we have already upheld the ALJ's finding that Antelope did not rebut this element.

Second, as to Mr. Goodin's pneumoconiosis arising out of coal mine employment, the ALJ noted that legal pneumoconiosis by statutory definition arises from coal mining. Appx., Vol. II at 283; 20 C.F.R. § 718.201(a)(2). Because Antelope failed to rebut the first element—the presence of legal pneumoconiosis—Antelope also failed to rebut the presumption that the pneumoconiosis arose out of Mr. Goodin's coal mine employment. Appx., Vol. II at 283.

Third, as to Mr. Goodin being totally disabled, Drs. Bodoni, Rose, and Farney all agreed Mr. Goodin was totally disabled. *Id.* at 275. The ALJ discounted Dr. Repsher's opinion to the contrary because Dr. Repsher appeared to misunderstand Mr. Goodin's job duties and because he did not consider Mr. Goodin's more recent test results. *Id.*

Fourth, as to pneumoconiosis having caused Mr. Goodin's total disability, Antelope needed to show that coal mining was not a "substantially contributing cause" to rebut this fourth element.[23] It did not do so.

The ALJ quoted the correct standard:

A miner shall be considered totally disabled due to pneumoconiosis if [it] . . . is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment. Pneumoconiosis is a "substantially contributing cause" of the minder's disability if it:

---

[23] The rule-out standard does not factor into this analysis because it is tied to the rebuttal limitations.

(i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or

(ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.

*Id.* at 274; *see* 20 C.F.R. § 718.204(c)(1).[24] As stated above, the ALJ found that Mr. Goodin suffered from a totally disabling respiratory condition and that Antelope had not shown that coal dust had not aggravated or materially worsened Mr. Goodin's condition. The record contains substantial evidence to support these findings.

The ALJ ultimately concluded that Antelope had failed to rebut any of the presumptively established elements of Mr. Goodin's claim and that Mr. Goodin "has established that he suffers from pneumoconiosis which is totally disabling and is caused by his coal mine employment." Appx., Vol. II at 283.

After careful review of the record and the ALJ's opinion and reasoning, we conclude the rebuttal limitations did not affect the outcome. The ALJ did not limit Antelope's evidence, and any alleged error was harmless because Mr. Goodin would have prevailed even without the rebuttal limitations.

### E. *Antelope's Remaining Arguments*

Antelope contends the Department's Office of Workers' Compensation Programs

---

[24] This regulation provides instruction when, as here, the claimant's respiratory condition is the product of both smoking and coal mine dust. The coal mine dust is a substantial cause if it had a material adverse effect on the condition. *See* 20 C.F.R. § 718.204(c)(1)(i).

("OWCP") did not perform a complete pulmonary exam on Mr. Goodin because the x-ray from the exam was unreadable. Antelope also maintains the ALJ erred in not considering all of the medical evidence it presented.

1. **Incomplete Pulmonary Exam**

30 U.S.C. § 923(b) states, "Each miner who files a claim for benefits under this subchapter shall upon request be provided an opportunity to substantiate his or her claim by means of a complete pulmonary evaluation." "A complete pulmonary evaluation includes a report of physical examination, a pulmonary function study, a chest roentgenogram [(x-ray)] and, unless medically contraindicated, a blood gas study." 20 C.F.R. § 725.406. A report from a physical examination submitted with a claim must include results from a chest x-ray that is conducted and interpreted pursuant to the regulations in § 718.102. *Id*. § 718.104(a)(5). Section 718.102 provides that an x-ray must be of suitable quality for proper classification of pneumoconiosis and cannot be used as evidence of pneumoconiosis unless it abides by the provisions in the section. *Id*. § 718.102.

Antelope argues that the OWCP failed to perform a complete pulmonary examination on Mr. Goodin due to the poor quality of the chest x-ray from the OWCP exam. Although the Department and Mr. Goodin agree that Mr. Goodin was entitled to a complete pulmonary exam, they argue that Antelope cannot challenge the completeness of the exam because the exam was for Mr. Goodin's benefit in establishing his claim, not for the operator's benefit in defending the claim.

-31-

Dr. Bodoni conducted the OWCP exam, including the chest x-ray interpretation. He thought the x-ray showed complicated pneumoconiosis.[25] Appx., Vol. II at 258-59. The ALJ discounted Dr. Bodoni's findings because of his lack of expertise in reading x-rays, his failure to rate the x-ray's quality, and Antelope's rebuttal evidence that the x-ray was unreadable. *Id.* at 277-78, 281. The ALJ stated that the x-ray, while arguably readable, was not of good quality. *Id.* The ALJ therefore put little weight on Dr. Bodoni's reading and found the x-ray was neither positive nor negative for pneumoconiosis. *Id.* Even so, the ALJ held the quality of the x-ray did not render the entire examination deficient. *Id.*

Antelope's argument to the contrary fails. Mr. Goodin underwent five additional chest x-rays, including one just five months after the challenged OWCP examination, which Antelope's expert, Dr. Repsher, reviewed. *Id.* at 277. In fact, Mr. Goodin had so many chest x-rays interpretations that the ALJ was not able to consider them all because of evidentiary limitations.

Moreover, the chest x-ray concerns clinical pneumoconiosis, and the ALJ determined that Mr. Goodin suffers from legal pneumoconiosis. Even if the x-ray had been more readable and had shown no clinical pneumoconiosis, the ALJ's determination of legal pneumoconiosis would stand because legal pneumoconiosis can be found without evidence of clinical pneumoconiosis.

---

[25] Per Antelope's request, Drs. Wiot and Meyer, both B-readers, also reviewed the x-ray and found it unreadable.

2. **Failure to Consider Medical Evidence**

The BLBA states that "all relevant evidence shall be considered . . . ." 30 U.S.C. § 923(b). Antelope argues that the ALJ's failure to consider some of its medical evidence calls for a remand for full consideration of the evidence.

Antelope contends the ALJ failed to consider three parts of the medical evidence. First, it argues that because the ALJ did not discuss Dr. Meyer's late-submitted interpretation of a CT scan in the analysis section of his decision, he must not have considered it. Second, Antelope complains the ALJ did not state what role Dr. Smith's treatment notes played in the outcome. Finally, Antelope argues the ALJ failed to credit Drs. Farney's and Repsher's explanations that Mr. Goodin's smoking, not his exposure to coal dust, produced his respiratory condition.

These arguments lack merit. The ALJ mentioned all of this evidence—Dr. Meyer's interpretation of the CT scan, Dr. Smith's treatment records, and the reports and depositions of Drs. Farney and Repsher. Appx., Vol. II at 255, 262-67. That the ALJ did not discuss every aspect of the evidence in his analysis does not mean he did not consider the evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

Moreover, Antelope does not persuasively argue that this evidence would have affected the outcome. As with the challenged x-ray discussed above, the CT scan interpretation could only rebut evidence of clinical pneumoconiosis, and the ALJ found

-33-

Antelope had failed to meet its burden of rebutting legal pneumoconiosis.  The treatment notes also only go to clinical pneumoconiosis:  Dr. Smith wrote, "The radiographic picture is certainly not typical for Coal Worker's pneumoconiosis but the patient may have a slowly active fibrosis in addition to the emphysema."  Appx., Vol. II at 267.

Antelope's arguments are more a matter of disagreement with the ALJ's assessment of the evidence as opposed to whether he considered the evidence at all.  We may not reweigh the evidence but can only determine whether substantial evidence supported the decision.  *Energy West*, 555 F.3d at 1217.  "[T]he task of weighing conflicting medical evidence is within the sole province of the ALJ."  *Hansen*, 984 F.2d at 368.

## III. CONCLUSION

Based on the foregoing, we deny Antelope's petition for review.