[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13584
Non-Argument Calendar
_____

Agency No. 14-0428 BLA


DRUMMOND COMPANY, INC.,

Petitioner,

versus

DIRECTOR, OWCP,
UNITED STATES DEPARTMENT OF LABOR,
BENEFITS REVIEW BOARD,
BARBARA A. ALLRED,
o/b/o and Widow of James K. Allred,

Respondents.

_____

Petition for Review of a Decision of the
Benefits Review Board
_____

(May 25, 2016)

Before TJOFLAT, WILLIAM PRYOR and FAY, Circuit Judges.

PER CURIAM:

Drummond Co., Inc. ("Drummond") seeks review of a Benefits Review Board's (the "BRB") decision affirming an Administrative Law Judge ("ALJ") order that granted benefits to a deceased coal mine worker, James Allred, and his surviving spouse, Barbara Allred, under the Black Lung Benefits Act (the "BLBA"), 30 U.S.C. §§ 901–944.  Drummond raises only one argument in this appeal—that the ALJ applied the wrong legal test when it determined that Drummond failed to rebut a statutory presumption that James Allred's respiratory disability was due to pneumoconiosis, commonly known as "black lung disease." Drummond failed to raise this argument before the BRB, thereby failing to exhaust the issue before the appropriate administrative agency.  We therefore deny Drummond's petition.

I.

James Allred was born in 1942.  He worked as a coalminer for Drummond in Alabama from around 1976 until 1998, a span of over twenty-two years**.**  Allred stopped working in the coal mines in 1998 after suffering a neck injury. According to his wife Barbara, Allred began having difficulty breathing in the early 1990s, which became progressively worse until his death in August 2010.  Allred began using supplemental oxygen around 2006 and was hospitalized several times for

acute exacerbations of chronic obstructive pulmonary disease ("COPD"), pneumonia, and chronic bronchitis.  In addition to his work in the coal mines, Allred was a long-time smoker.  Allred smoked between one and one-and-a-half packs of cigarettes per day continuously starting around 1957 until his death, even as his health deteriorated. Drummond argued that Allred's disability was due to his smoking, not his employment.

Allred filed for black lung benefits[1] with the Department of Labor in April 2010 while he was living in hospice care. While a decision was pending, Allred died in August 2010.  His wife Barbara then filed her own claim for survivor benefits in October 2010,[2] and proceeded with James Allred's claim.  In December, a claims examiner issued a Proposed Decision and Order denying Allred benefits.[3]  Barbara Allred, on James Allred's behalf, requested a formal hearing before an ALJ.  The ALJ remanded that case back to the claims examiner and consolidated it with Barbara Allred's independent claim for survivor benefits. This time around, the claims examiner issued a Proposed Decision and Order awarding benefits to Mrs. Allred.  Drummond requested a formal hearing before an ALJ on both claims, which was held on July 19, 2012.

---

[1] A person who has engaged in coal mine employment is entitled to benefits if he is totally disabled due to pneumoconiosis.  30 U.S.C. §§ 901–944.

[2] 30 U.S.C. § 932(l) provides for benefits automatically for eligible surviving spouses if the miner was eligible to receive benefits at the time of his death.

[3] The claims examiner was part of the Mount Sterling, Kentucky District, which is a regional office of the Division of Coal Mine Workers' Compensation, which itself is a subdivision of the Department of Labor's Office of Workers' Compensation Programs.

On July 16, 2014, the ALJ issued an order awarding benefits on both claims to Mrs. Allred.  The ALJ found that Allred had engaged in coal mine employment for more than fifteen years and was "totally disabled" at the time of his death due to a respiratory or pulmonary impairment.[4]  As a result of those findings, which Drummond conceded. Allred was entitled to a rebuttable presumption that his disability was due to pneumoconiosis.  30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(b)–(c). The ALJ found that Drummond failed to rebut the presumption, and as a result, awarded benefits to Mrs. Allred in both cases.  Drummond appealed the decision to the BRB, which affirmed the ALJ.  This petition followed.

## II.

The BLBA provides benefits to "coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease."  30 U.S.C. § 901(a).  It defines "pneumoconiosis" as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment."  30 U.S.C. § 902(b).  The

---

[4] Department of Labor regulations implementing the BLBA provide that a miner is "totally disabled" if

> the miner has a pulmonary or respiratory impairment, which, standing alone, prevents or prevented the miner:
>
> (i)    From performing his or her usual coal mine work; and
>
> (ii)   From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time.

20 C.F.R. § 718.204(b)(1).

4

BLBA has created a rebuttable presumption that a miner is disabled due to pneumoconiosis when he has worked for fifteen years in underground coal mines and is totally disabled from a respiratory or pulmonary condition.  30 U.S.C. § 921(c)(4).  Therefore, if a coal miner has worked fifteen years in underground coal mines and is totally disabled due to respiratory or pulmonary condition, he is entitled to benefits unless the presumption can be overcome. The requirements that an employer must meet to rebut the presumption are provided for in the Department of Labor's regulations implementing the BLBA.

In order to understand how the presumption is rebutted, it is necessary to lay out some key provisions of the regulatory framework.  The regulations recognize two types of pneumoconiosis, "clinical pneumoconiosis" and "legal pneumoconiosis."  Clinical pneumoconiosis consists of a cluster of diseases "characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment."  20 C.F.R. § 718.201(a)(1). Legal pneumoconiosis is considerably broader.  It consists of "any chronic lung disease or impairment and its sequelae arising out of coal mine employment."  20 C.F.R. § 718.201(a)(2).  For a disease or impairment to "arise[] out of coal mine employment," it must be "significantly related to, or substantially aggravated by, dust exposure in coal mine employment."  20 C.F.R. § 718.201(b).

5

The regulations provide two methods by which the presumption can be rebutted: 1) by "establishing both that the miner does not, or did not, have," either legal pneumoconiosis or clinical pneumoconiosis or 2) by "[e]stablishing that no part of the miner's respiratory or pulmonary disability was caused by pneumoconiosis." 20 C.F.R. § 718.305(d)(1)(i), (ii).[5] Other Circuits have referred to this second method of rebutting the presumption as the "rule-out" standard, meaning that the employer must "rule out" pneumoconiosis as having any causal connection to the miner's disability. *See, e.g.*, *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 143 (4th Cir. 2015); *Antelope Coal Co./Rio Tinto Energy Am. v. Goodin*, 743 F.3d 1331, 1336 (10th Cir. 2014).

Drummond did not contest that Allred was entitled to the presumption because he worked for over fifteen years in coal mines and was totally disabled. Nor does it contest that finding here. Instead, it argues that the ALJ applied the wrong legal standard as to the first method of rebutting the presumption—that Allred did not have clinical or legal pneumoconiosis. In the course of her opinion,

---

[5] Because the definition of pneumoconiosis has a causal component—the impairment must "arise out of coal mine employment," meaning the impairment is "significantly related to, or substantially aggravated by, dust exposure in coal mine employment"—and the second method of rebutting the presumption also involves causation, it may be helpful to think about the difference between the two methods as follows. Proving the first method would mean that the miner does not have pneumoconiosis at all; he does not have a chronic pulmonary disease "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." The second method of rebutting the presumption would mean that the miner may or may not have pneumoconiosis, but the pneumoconiosis is not the cause of his *disability*. For example, the miner may have pneumoconiosis, but the reason he is disabled is due to lung cancer, which the employer could prove has nothing to do with his pneumoconiosis. *See W. Va. CWP Fund v. Bender*, 782 F.3d 129, 141 (4th Cir. 2015).

6

the ALJ considered the opinions of several physicians, pulmonary function tests, arterial blood gas tests, and X-rays.  She concluded that Drummond failed to satisfy either method of rebuttal.  However, when discussing the first method, she wrote "I find that the Employer has failed to rebut the presumption by ruling out legal pneumoconiosis or by ruling out coal mine employment as a cause of the Miner's disability."  Because "rule out" has a special meaning in these cases, Drummond argues that the ALJ's statement indicates that she applied a higher standard to disprove the existence of legal pneumoconiosis than required under the regulations.

To disprove legal pneumoconiosis, an employer would need to prove the inverse of the 20 C.F.R. § 718.201(a)(2), which defines legal pneumoconiosis as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment."  Because no one contests that Allred had a chronic lung disease or impairment, only the "arising out of coal mine employment" component of the definition is relevant here.  To show that a disease did not "arise[] out of coal mine employment," the employer would need to show that it was not "*significantly* related to, or *substantially* aggravated by, dust exposure in coal mine employment."  20 C.F.R. § 718.201(b) (emphasis added).  Drummond argues that the opinion's use of the phrase "rule out legal pneumoconiosis" means that Drummond could only have disproved legal pneumoconiosis by showing that

7

Allred's impairment was not related to or aggravated by dust exposure in coal mines at all, which is more demanding than the plain language of the regulations requires.  Had the ALJ provided the correct legal standard, Drummond claims it may have prevailed under the first method of rebuttal.

Drummond makes this argument for the first time in its brief to this court.  It failed to present the argument to the BRB, and of course for that reason, the BRB did not address it.  As we stated before regarding the BLBA, "[u]nder general rules of appellate review, an appellate court should not overrule an administrative decision unless the administrative body erred against objections presented to it." *Dir., OWCP v. Drummond Coal Co.*, 831 F.2d 240, 243 (11th Cir. 1987) (quotation marks omitted) (quoting *Taft v. Ala. By-Products Corp.*, 733 F.2d 1518, 1523 (11th Cir. 1984)).  The BRB's regulations require petitions to "list[] the specific issues to be considered on appeal."  20 C.F.R. § 802.211(a); *Sims v. Apfel*, 530 U.S. 103, 108, 120 S. Ct. 2080, 2084, 147 L. Ed. 2d 80 (2000) (using the BRB as an example of an administrative agency that requires issues to be exhausted before it).  Courts require administrative issue exhaustion, even in the absence of an explicit statutory command, "'as a general rule' because it is usually 'appropriate under [an agency's] practice' for 'contestants in an adversary proceeding' before it to develop fully all issues there." *Sims*, 530 U.S. at 109, 120 S. Ct. at 2084–85 (alteration in original) (quoting *United States v. L.A. Trucker*

*Truck Lines, Inc.*, 344 U.S. 33, 33–37, 73 S. Ct. 67, 68–69, 97 L. Ed. 54 (1952). The Supreme Court has instructed that "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Id.*, 120 S. Ct. at 2085. That is to say, if the administrative proceedings were adversarial and resembled court proceedings, then courts ought to apply an issue exhaustion requirement, lest courts encourage litigants to "bypass" agency requirements, like 20 C.F.R. § 802.211(a). *See id.* at 108, 120 S. Ct. at 2084.

Here, there can be no doubt that proceedings held before the BRB were adversarial. Drummond and Mrs. Allred both presented briefs addressing the merits of the ALJ's decision. Thus, we see no reason not to apply the "general rule" here.

Although Drummond argued that the ALJ erred in her decision in its brief to the BRB, none of the arguments it made was the only one it makes to this court. In its brief to the BRB, Drummond made two principle arguments: 1) that the ALJ erred in crediting the evidence submitted on behalf of Allred and 2) that the ALJ applied the wrong legal standard as it relates to the *second method of rebuttal*, that "no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis." 20 C.F.R. § 718.305(d)(1)(ii). The first argument was purely factual; Drummond argued that the ALJ assigned too much weight to the evidence

9

suggesting Allred was totally disabled due to pneumoconiosis.  Drummond's second argument was that under § 718.305(d)(1)(ii), an employer does not need to "rule out" pneumoconiosis as a cause of a miner's disability, but rather, an employer need only show that the miner "would have been disabled regardless of the exposure to coal dust."  In other words, Drummond argued to the BRB that there was no "rule out" standard at all, not that the ALJ misapplied the rule out standard to the first method of rebuttal.  The BRB addressed the argument Drummond made, sensibly concluding that plain language of § 718.305(d)(1)(ii) supported the "rule-out" standard, and not Drummond's proposed alternative standard.  It did not address the argument that the ALJ may have applied the wrong legal standard by using the phrase "rule-out" to refer to the employer's rebuttal of legal pneumoconiosis.  Nor does Drummond argue that the BRB itself applied an incorrect legal standard in its opinion affirming the ALJ.  Because Drummond failed to exhaust this issue before the BRB, its claim must fail.

**PETITION DENIED.**