NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0498n.06

Case No. 17-4058

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KENWEST TERMINALS, LLC,      )
     )
     Petitioner,      )
     )
v.      )
     )
VICKIE S. SALYERS; DIRECTOR, OFFICE      )
OF WORKERS' COMPENSATION      )
PROGRAMS; UNITED STATES      )
DEPARTMENT OF LABOR,      )
     )
     Respondents.      )

**FILED**
Oct 05, 2018
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE BENEFITS REVIEW
BOARD

BEFORE: BATCHELDER, DONALD, and THAPAR, Circuit Judges.

THAPAR, Circuit Judge. KenWest Terminals, LLC appeals an award of federal black-lung benefits to Vickie Salyers on behalf of her deceased husband, Lowell Salyers. We affirm.

I.

Lowell Salyers worked at a coal preparation facility for over two decades. The facility sat at the intersection between the Ohio and Big Sandy Rivers in Catlettsburg, Kentucky, where barges lined up to receive shipments of coal. Raw coal came to the facility "straight out of the mines." JA 136. And Salyers's job was to get that raw coal prepared to ship and loaded onto the barges. This required Salyers to crush and size raw coal every day.

By all accounts, the work was difficult. Coal dust was everywhere. In fact, Salyers often left work so covered in dust that "you couldn't see nothing but eyes and the rest of [him] was black." *Id.* at 100. The dust so overwhelmed the facility that it forced Salyers and his colleagues to pause work at times. And when Salyers came home after work, he would often "cough up black looking stuff." *Id.* at 105.

While working at the facility, Salyers developed breathing problems. Whether from the conditions at the facility or his avid smoking habit (up to multiple packs per day), Salyers found himself increasingly "short-winded." *Id.* at 102. A chest x-ray taken during his final years of work revealed that he had "moderately severe" chronic obstructive pulmonary disease. *Id.* at 157. And eventually, Salyers had so much trouble breathing at work that he had to quit. Unfortunately, his health only worsened. A few years after leaving the facility, Salyers developed lung cancer, and doctors had to remove one of his lungs. Complications from the procedure resulted in Salyers developing a large, open wound in his chest. Subsequently, Salyers died.

Before his death, Salyers applied for federal black-lung benefits. And after many years, an Administrative Law Judge (ALJ) finally awarded benefits. Because Salyers had died in the interim, his wife, Vickie, received the award instead. KenWest Terminals, which is responsible for paying out Salyers's benefits, appealed. The Benefits Review Board (Board) affirmed the award. KenWest now appeals.

We review the Board's legal conclusions de novo and the ALJ's factual findings for substantial evidence. *Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 488 (6th Cir. 2014). Substantial evidence is enough evidence that a "reasonable mind" would find sufficient. *Id.* (quoting *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985)). The ALJ's decision may be affirmed if it "rest[s] within the realm of rationality,"

even if "we would have taken a different view of the evidence were we the trier of facts." *Brandywine Explosives & Supply v. Dir., Office of Workers' Comp. Programs*, 790 F.3d 657, 664 (6th Cir. 2015) (internal citations and quotation marks omitted).

## II.

KenWest first argues that Salyers is ineligible for black-lung benefits because he is not a coal miner. But the plain text of the benefits statute refutes KenWest's argument. The statute defines a "miner" as "any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal." 30 U.S.C. § 902(d); *see also id.* § 932(a). We have held that this definition comprises two elements: the claimant must have (1) worked in a coal mine, and (2) his duties must have included coal extraction or coal preparation. *Southard v. Dir., Office of Workers' Comp. Programs*, 732 F.2d 66, 69 (6th Cir. 1984) (citing *Amigo Smokeless Coal Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 642 F.2d 68 (4th Cir. 1981)). A coal mine is "an area of land . . . used in, or to be used in, . . . the work of extracting . . . coal . . . and the work of preparing the coal so extracted, and includes custom coal preparation facilities[.]" 30 U.S.C. § 802(h)(2); *see also Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor v. Consolidation Coal Co.*, 884 F.2d 926, 932 (6th Cir. 1989) ("[P]reparation facilities are still defined as 'coal mines' even though they may be geographically remote from the site where coal is physically mined."). The preparation of coal is defined as the "crushing, sizing, . . . and loading" of coal. 30 U.S.C. § 802(i).

At KenWest, Salyers prepared raw coal every day by crushing and sizing it before loading it onto barges for transport. Therefore, he satisfies both elements of the definition of a "miner" under the benefits statute. *See id.* §§ 902(d), 802(h)(2). While KenWest points to a variety of cases in this circuit and others to argue that Salyers is not a "miner," those cases all address

employees dealing with coal *after* preparation. But Salyers worked with coal *before and during* preparation. KenWest's cases are inapposite. *See Ray v. Brushy Creek Trucking Co., Inc.*, 50 F. App'x 659, 662 (6th Cir. 2002) (holding that a claimant was not a "miner" because he worked with coal that had already been crushed); *Eplion v. Dir., Office of Workers' Comp. Programs, Div. of Coal Mine Workers' Comp., U.S. Dep't of Labor*, 794 F.2d 935, 937 (4th Cir. 1986) ("The coal was already processed and prepared for market before [the claimant] had any contact with it."); *Southard*, 732 F.2d at 69–70 (finding that "the coal was extracted and prepared before" the claimant worked with it).

III.

KenWest further contends that Salyers did not suffer from pneumoconiosis, or that even if he did, he was not totally disabled because of it. To be eligible for black-lung benefits, a miner must show that he has pneumoconiosis, i.e., "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b); 20 C.F.R. § 725.202(d)(2)(i); *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1069 (6th Cir. 2013). Further, he must demonstrate that his pneumoconiosis at least contributed to him being totally disabled. *See* 30 U.S.C. §§ 902(f)(1)(A), 932(a); 20 C.F.R. § 725.202(d)(2)(iii)–(iv); *Ogle*, 737 F.3d at 1069, 1071.

In making these showings, however, a legal presumption aids disabled miners who have worked for fifteen years or more in a coal mine or "substantially similar" environment and who "demonstrate[] the existence of a totally disabling respiratory or pulmonary impairment." 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(b)(1)(i); *Ogle*, 737 F.3d at 1069. In such circumstances, a miner is presumed to have pneumoconiosis that caused his total disability.

30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(c)(1); *Ogle*, 737 F.3d at 1069. And here, the ALJ concluded that the presumption should apply, a finding which KenWest does not dispute on appeal.

Thus, KenWest needed to rebut the presumption by showing that either (a) Salyers did not have pneumoconiosis, or (b) his pulmonary condition did not arise out of his coal mining work. *See* 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(d)(1)(i)–(ii); *Ogle*, 737 F.3d at 1069–70. The ALJ determined that KenWest failed to rebut the presumption by either means.

*Pneumoconiosis.* To rebut the presumption of pneumoconiosis, KenWest offered Salyers's medical records and medical opinions from two doctors. The medical records showed numerous pulmonary conditions, including anthracosis and "coal workers' pneumoconiosis." Both diseases may qualify as "clinical pneumoconiosis"—specified lung diseases that the medical community recognizes as pneumoconioses. 20 C.F.R. § 718.201(a)(1); *Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 597 (6th Cir. 2014). But only if they "aris[e] out of coal mine employment." 20 C.F.R. § 718.201(a)(1). After reviewing Salyers's medical records, one of the doctors explained that Salyers had insufficient exposure to coal dust for his anthracosis to have arisen out of his coal mining. Thus, the doctor determined that Salyers's smoking, not his coal mining, caused his anthracosis. And the insufficient coal dust in Salyers's lungs also caused the doctor to rule out coal workers' pneumoconiosis. Based on this evidence, the ALJ found that KenWest sufficiently ruled out clinical pneumoconiosis.

But ruling out clinical pneumoconiosis alone was insufficient to rebut the presumption that Salyers had pneumoconiosis. That's because the regulations divide pneumoconiosis into two categories: clinical or "legal pneumoconiosis." *Id.* § 718.201(a). And legal pneumoconiosis is much broader than clinical pneumoconiosis. Legal pneumoconiosis refers to "any chronic lung disease . . . arising out of coal mine employment"—including chronic obstructive pulmonary

- 5 -

disease (COPD). *Id.* § 718.201(a)(2); *Arch on the Green, Inc.*, 761 F.3d at 597 (defining legal pneumoconiosis as "a remainder category including COPD."). Neither medical opinion addressed why Salyers's COPD did not constitute legal pneumoconiosis. Therefore, the ALJ found that the doctors' evaluations were insufficient to show that Salyers's COPD did not meet the broader definition of legal pneumoconiosis.

KenWest challenges this finding, arguing that the doctors did not need to specifically address Salyers's COPD—ruling out coal workers' pneumoconiosis sufficed. But coal workers' pneumoconiosis is a type of *clinical* pneumoconiosis. 20 C.F.R. § 718.201(a)(1); *Clinchfield Coal Co. v. Fuller*, 180 F.3d 622, 625 (4th Cir. 1999); *cf. Martin v. Ligon Preparation Co.*, 400 F.3d 302, 306 (6th Cir. 2005). And so ruling out coal workers' pneumoconiosis did not rule out *legal* pneumoconiosis or account for why Salyers's COPD did not qualify as legal pneumoconiosis. By ruling out only clinical but not legal pneumoconiosis, KenWest failed to rebut the presumption that Salyers's COPD should be considered a form of pneumoconiosis. *Brandywine Explosives*, 790 F.3d at 668 (affirming ALJ decision to discredit doctor who "relied only on the lack of a finding of clinical pneumoconiosis, providing no explanation for why he did not believe dust exposure played a role in the [miner's] COPD"); *accord Cent. Ohio Coal Co.*, 762 F.3d at 492; *Ogle*, 737 F.3d at 1074; *cf. Westmoreland Coal Co. v. Amick*, 123 F. App'x 525, 531–32 (4th Cir. 2004) (reversing ALJ decision for improperly discrediting medical opinions that expressly ruled out miner's COPD as possible pneumoconiosis).[1]

---

[1] KenWest further argues that the ALJ improperly calculated Salyers's smoking history. But Salyers's smoking history had nothing to do with the ALJ's determination that KenWest failed to rebut Salyers's presumed pneumoconiosis. So any error in calculating Salyers's smoking history is of no consequence to this issue. *See Cent. Ohio Coal Co.*, 762 F.3d at 493.

*Arise out of.* The ALJ further determined that KenWest failed to establish that pneumoconiosis played no part in Salyers's total disability. Since the doctors who evaluated Salyers did not discuss legal pneumoconiosis and the impact of Salyers's COPD on his disability, the ALJ found their opinions unhelpful in considering the effect of that pneumoconiosis. This reasoning makes sense. An opinion ignoring legal pneumoconiosis altogether cannot speak to the effect that it had on Salyers's total disability. *Brandywine Explosives*, 790 F.3d at 667–68 (affirming ALJ decision to discredit doctors' opinions on causation "because they had not found legal pneumoconiosis"); *accord Lemarco, Inc. v. Helton*, 559 F. App'x 465, 469 (6th Cir. 2014) (citing *Toler v. E. Associated Coal Co.*, 43 F.3d 109, 116 (4th Cir. 1995)). Perhaps, as the doctor opined, Salyers's disability had more to do with his lung cancer or smoking. But since the doctors did not even consider whether Salyers's COPD qualified as legal pneumoconiosis, their opinions did not sufficiently rule out COPD as a cause of his disability. *See Ogle*, 737 F.3d at 1071 (explaining that once the burden is on the employer, it must prove that "the coal mine employment *played no part* in causing the total disability").

\* \* \*

Thus, the ALJ's finding that KenWest failed to rebut Salyers's presumed pneumoconiosis, and its presumptive contribution to his total disability, was supported by substantial evidence.

We affirm.