NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0094n.06

Case No. 19-3056

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Feb 10, 2020
DEBORAH S. HUNT, Clerk

|   |   |   |
|---|---|---|
| KENTUCKY PRINCE MINING COMPANY, | ) | |
| Petitioner, | ) ) | |
| v. | ) ) ) | ON PETITION FOR REVIEW FROM THE BENEFITS REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR |
| DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; WILMA SALYERS, on behalf of the Estate of Billy Ray Salyers, | ) ) ) ) ) ) | |
| Respondents. | ) ) ) | |

BEFORE: McKEAGUE, BUSH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Kentucky Prince Mining Company ("Kentucky Prince") petitions for review of a Benefits Review Board ("Board") decision affirming an award of Black Lung benefits to Billy Ray Salyers. Because substantial evidence supports the administrative law judge's ("ALJ") decision and the decision does not contradict applicable law, we DENY Kentucky Prince's petition for review.

I.

The parties disputed how long Billy Ray Salyers worked for each of his employers. But Kentucky Prince does not contest (1) that Salyers worked over fifteen years in the coal mining

industry, (2) that Mr. Salyers spent several of those last years with Kentucky Prince, or (3) that Mr. Salyers smoked cigarettes daily for several decades.

Mr. Salyers filed this claim for black lung benefits in 2012. That year, Dr. Mahmood Alam examined Mr. Salyers and diagnosed him with legal and clinical pneumoconiosis. Soon after, Dr. David Rosenberg also examined Mr. Salyers. Yet he concluded that Mr. Salyers did not suffer from clinical or legal pneumoconiosis. The District Director of the Office of Workers' Compensation issued a proposed decision and order awarding benefits. After that, Dr. Rosenberg elaborated on his examination of Mr. Salyers in a deposition. And Kentucky Prince requested a formal hearing with an ALJ.

The ALJ found that the fifteen-year rebuttable presumption of "total[] disab[ility] due to pneumoconiosis" applied to Mr. Salyers's claim. *See* 20 C.F.R. § 718.305(c)(1). The ALJ also concluded that Kentucky Prince partially rebutted the presumption by showing that Mr. Salyers did not have clinical pneumoconiosis. *See id.* § 718.305(d)(1)(i)(B). But the ALJ ruled against Kentucky Prince because it did not fully rebut the presumption under the first rebuttal method. Kentucky Prince also needed to disprove legal pneumoconiosis, *see id.* § 718.305(d)(1)(i)(A), and it did not meet that burden. What's more, Kentucky Prince could have rebutted the presumption by showing that pneumoconiosis caused no part of Mr. Salyer's total disability. *See id.* § 718.305(d)(1)(ii). Kentucky Prince lost under this second rebuttal method too, from the ALJ's point of view. So she awarded Mr. Salyers benefits.

Kentucky Prince appealed, and the Board affirmed, finding that the ALJ permissibly discredited Dr. Rosenberg's testimony. The Board reasoned that, without Dr. Rosenberg's testimony, the ALJ correctly ruled that Kentucky Prince did not rebut total disability due to pneumoconiosis. So Kentucky Prince asked the Board to reconsider its decision. And the Board

denied that motion. Then Kentucky Prince petitioned this court for review, arguing that both the ALJ and Board erred. Around the same time, Wilma Salyers, Mr. Salyers's wife, became the administrator of Mr. Salyers's estate. This happened because Mr. Salyers passed away between the ALJ's award of benefits and the Board's first decision and order.

## II.

We only overturn the Board's decision and order if the Board "committed legal error or exceeded its scope of review of the ALJ's findings." *Peabody Coal Co. v. Groves*, 277 F.3d 829, 833 (6th Cir. 2002). This means we really review the ALJ's findings to see if they are "supported by substantial evidence and [are] consistent with applicable law." *Peabody Coal Co. v. Odom*, 342 F.3d 486, 489 (6th Cir. 2003). Substantial evidence requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Peabody Coal Co. v. Greer*, 62 F.3d 801, 804 (6th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If substantial evidence supports an ALJ's factual conclusions, we defer to the ALJ's findings about credibility and the weight given to medical opinions. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1072 (6th Cir. 2013). And we do not disturb an ALJ's factual findings supported by substantial evidence—even if we suspect the evidence might support a contrary conclusion. *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995).

## III.

To qualify for Black Lung benefits, a miner must show that: (1) he "has pneumoconiosis[,]" (2) the disease resulted from a job with a coal mine, (3) he is "totally disabled[,]" and (4) the "pneumoconiosis contributes to the total disability." *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 257 (6th Cir. 2018) (quoting 20 C.F.R. § 725.202(d)(2)). The

parties agree that Mr. Salyers suffered a total disability. They specifically dispute the fourth factor—whether the pneumoconiosis caused his impairment.

An ALJ may presume that a miner suffers from a "total[] disab[ility] due to pneumoconiosis" (1) if he worked in the coal industry at a qualifying coal mine for at least fifteen years, (2) the miner "cannot establish entitlement . . . by means of chest x-ray evidence[,]" and (3) the miner "has . . . a totally disabling respiratory or pulmonary impairment[.]" 20 C.F.R. § 718.305(b)(1)(i)–(iii), (c)(1). This presumption "applies to all claims filed after January 1, 2005, and [still] pending on or after March 23, 2010." *Id.* § 718.305(a). The presumption of § 718.305 applied here to establish that Mr. Salyers's pneumoconiosis caused his total disability. And Kentucky Prince does not dispute that the ALJ properly invoked the presumption. Rather, Kentucky Prince insists that it offered a valid rebuttal.

An employer can rebut the presumption by showing that (1) the miner did not have legal or clinical pneumoconiosis or (2) pneumoconiosis caused no part of the miner's total disability. *Id.* § 718.305(d)(1)(i)–(ii); *see* 30 U.S.C. § 921(c)(4). To rebut the first way, the employer must prove that "coal-mine exposure had at most only a *de minimis* effect on [the miner's] lung impairment." *Island Creek Coal Co. v. Young*, 947 F.3d 399, 407 (6th Cir. 2020). To rebut the second way, the employer must completely rule out pneumoconiosis as contributing to the miner's total disability. *Id.*

Substantial evidence supports the ALJ's finding that Kentucky Prince failed to rebut the presumption. Dr. Rosenberg's testimony is Kentucky Prince's best grounds for rebuttal. But the ALJ permissibly discredited it.

Dr. Rosenberg cited a decreased $FEV_1/FVC$ ratio[1] as one of the reasons why Mr. Salyers did not have legal pneumoconiosis. But, as the ALJ pointed out, the preamble to the regulations states otherwise. And we've noted that this decreased-ratio analysis "plainly contradicts the [Department of Labor's] position that [the disease] . . . may be associated with decrements in the $FEV_1/FVC$ ratio." *Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 491 (6th Cir. 2014). An ALJ can "consider the [Department of Labor's] position and . . . discredit [a doctor's] testimony because it was inconsistent with the [Department of Labor's] position set forth in the preamble to the applicable regulation." *Id.*; *see also Robert Coal Co. v. Dir., Office of Workers' Comp. Programs*, 753 F. App'x 350, 358–59 (6th Cir. 2018) (affirming an award of benefits after finding that an ALJ permissibly discredited a doctor who argued that a decreased ratio does not show legal pneumoconiosis). So we defer to the ALJ's decision to discredit Dr. Rosenberg's testimony.[2]

What's more, the ALJ did not read Dr. Rosenberg's statements about the ratio out of context, contrary to what Kentucky Prince argues. To start out, Dr. Rosenberg appeared to

---

[1] "$FEV_1$ is 'forced expiratory volume in one second.' FVC is 'forced vital capacity.' Both are pulmonary-function tests that measure the volume of air that can be blown out of the lungs after taking a full breath: FVC tests total volume, and $FEV_1$ tests how much air is emitted in one second." *Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 491 n.3 (6th Cir. 2014).

[2] In *Central Ohio Coal*, we noted that employers in future cases could try to argue that the Department of Labor's position in the preamble about the $FEV_1/FVC$ ratio defies recent scientific findings. 762 F.3d at 491. We suggested that an employer could present "'the type and quality of medical evidence that would invalidate' the [Department of Labor's] position in [a] scientific dispute." *Id.* (quoting *Midland Coal Co. v. Dir., Office of Workers' Comp. Programs*, 358 F.3d 486, 490 (7th Cir. 2004)). But like the employer in *Central Ohio Coal*, Kentucky Prince did not "ask[] this court to make . . . such [a] determination." *Id.*; *see also Quarto Mining Co. v. Marcum*, 604 F. App'x 477, 484 (6th Cir. 2015). In other words, Kentucky Prince did not ask us to go against the findings of the preamble due to an abundance of medical evidence to the contrary. In fact, Kentucky Prince impliedly argues the opposite—that the Department of Labor's views in the preamble *are* appropriate—because Kentucky Prince emphasizes that Dr. Rosenberg agreed with those views.

disagree with the notion that slashed ratios reveal coal-dust-induced respiratory issues. Instead, he said that reduced ratios only show smoking-induced respiratory issues:

> It's also been demonstrated that with coal dust, the FVC falls also in a generally symmetrical fashion such that the $FEV_1$/FVC ratio is preserved or normal, or only slightly reduced. In contrast, with smoking related forms of airways disease, the $FEV_1$ falls, but to a much greater extent generally than the FVC, such that the ratio decreases.

(CA6 R. 19, J.A. at 570–71.) So this means Dr. Rosenberg disagreed with the preamble, which notes that a reduced ratio points to coal-dust diseases. *See* Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. 79920, 79943 (Dec. 20, 2000).

The attorney questioning Dr. Rosenberg probed the discrepancy between Dr. Rosenberg's statements and the preamble. The attorney asked: "It's been described as the Department of Labor's position that a decrease in the $FEV_1$/FVC ratio itself is a symptom of pneumoconiosis or legal pneumoconiosis, coal dust exposure in general. Is that something that you would disagree with?" (CA6 R. 19, J.A. at 573.) For a second time, Dr. Rosenberg contradicted the Department of Labor:

> Yeah, I would disagree. Could it be, could you see a specific patient where the ratio is down and have legal [coal worker's pneumoconiosis]? Sure. But when you look at the general pattern of impairment that occurs in relationship to legal [coal worker's pneumoconiosis], . . . articles do not support that premise . . . .

(*Id.* at 573–74.) Only when the attorney kept prodding did Dr. Rosenberg acknowledge the Department of Labor's point. The attorney asked, "So I guess [a decreased ratio indicating coal-dust-induced pneumoconiosis is] a slim possibility, but not likely[?]" (*Id.* at 574.) And Dr. Rosenberg responded, "Well, it can occur." (*Id.*) So after several questions, Dr. Rosenberg admitted that the Department of Labor had a point. But he did so with clear hesitation. Indeed, he then repeated, "But if you look at the ratio[] and other factors which we've talked about . . . this

is not a form of legal [coal worker's pneumoconiosis]." (*Id.*) Thus, despite admitting a decreased

ratio "can occur" with legal pneumoconiosis, he immediately referred to the ratio as *not* showing

pneumoconiosis, which contradicts the preamble.

So the ALJ did not read Dr. Rosenberg's statements disagreeing with the Department of

Labor out of context. Rather, the ALJ read Dr. Rosenberg's statement agreeing with the

Department of Labor *in* context. As a whole, Dr. Rosenberg's testimony suggests that he objects

to the Department of Labor's view. Dr. Rosenberg's statement that a decreased ratio "can occur"

as a result of coal-dust exposure in no way suggests that his opinion fully follows the Department

of Labor's. Rather, while he admits that the Department of Labor's view is sometimes true, he

mainly disagrees.

Considering Dr. Rosenberg's equivocation, we do not find error with how the ALJ read

Dr. Rosenberg's statements. The ALJ could discredit Dr. Rosenberg's opinion because Dr.

Rosenberg resists the Department of Labor's view on the $FEV_1/FVC$ ratio. When reviewing Dr.

Rosenberg's ratio testimony in its entirety, we see why the ALJ and Board reasonably interpreted

Dr. Rosenberg's statements as contradicting the Department of Labor.

Along with the contextual arguments, Kentucky Prince contends that Dr. Rosenberg's

testimony constituted "conclusions," not "claim[s]" (as the ALJ called them). To Kentucky Prince,

this distinction affects the outcome here. But this is mere quibbling over semantics. And that is

not enough to show a lack of substantial evidence. Whether Dr. Rosenberg's statements embodied

claims or conclusions, the point remains the same: the ALJ permissibly weighed the statements

as she found correct.[3]

---

[3] Finally, since the ALJ permissibly discredited Dr. Rosenberg due to the ratio, we need not discuss Kentucky Prince's arguments about the ALJ's comments over emphysema. The ratio finding already provides substantial evidence for the discrediting and is consistent with applicable law.

In sum, Kentucky Prince lacked enough rebuttal proof because the ALJ permissibly discredited Dr. Rosenberg's testimony. We therefore uphold the ALJ's findings that Kentucky Prince failed to disprove the existence of legal pneumoconiosis and rule out that pneumoconiosis caused Mr. Salyers's undisputed total disability.

\* \* \*

For these reasons, we DENY the petition for review.