NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0549n.06

No. 25-3190

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ICG KNOTT COUNTY, LLC,

    Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; JAMIE HAMILTON,

    Respondents.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Dec 01, 2025
KELLY L. STEPHENS, Clerk

ON PETITION FOR REVEIW FROM THE BENEFITS REVIEW BOARD

OPINION

Before: SUTTON, Chief Judge; MURPHY and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. ICG Knott County, LLC, a coal mine operator, petitions for review of a Benefits Review Board decision affirming its liability for benefits to Jamie Hamilton under the Black Lung Benefits Act. Because ICG failed to rebut the regulatory presumption that Hamilton's disability arose out of his employment with ICG, we deny the petition for review.

Jamie Hamilton worked for over 14 years as a coal miner, including for ICG. After leaving ICG, he worked for over a decade as a mine inspector for the Department of Labor's Mine Safety and Health Administration (the Administration). The Administration sent Hamilton to get a physical every three years while he worked there, and in 2019 his doctor informed him he had complicated pneumoconiosis, also known as black lung disease. At this point, the Administration told him he could no longer work there due to the deterioration of his lungs. So Hamilton petitioned

the Department of Labor's Office of Workers' Compensation Programs for benefits under the Black Lung Benefits Act (the Act).

The Act provides benefits to coal miners who become disabled due to pneumoconiosis. *Incoal, Inc. v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Labor*, 123 F.4th 808, 813 (6th Cir. 2024). A claimant is eligible for benefits when they demonstrate that they are (1) a coal miner (2) who suffers from pneumoconiosis, (3) which arose out of their coal mine employment, (4) causing (5) total disability. *Id.* at 813–14 (citing 20 C.F.R. § 725.202(d)). The most recent coal mine operator for which the claimant worked is generally responsible for paying out the claimant's benefits. 20 C.F.R. § 725.495(a)(1). But, as relevant here, an employer is only liable if "[t]he miner's disability or death arose at least in part out of" the claimant's employment. *Id.* § 725.494(a).

In proceedings before an administrative law judge (ALJ), ICG did not dispute that it was the most recent coal mine operator that Hamilton worked for as a coal miner.[1] Nor did it dispute that Hamilton has pneumoconiosis or that he is totally disabled. Thus, the key issue in the administrative proceeding was whether Hamilton's pneumoconiosis arose out of his employment with ICG.[2]

The regulatory framework establishes a rebuttable presumption that a miner's pneumoconiosis arose out of their employment with an operator. *Id.* Despite this, ICG urged the ALJ to rule that it was not liable for Hamilton's pneumoconiosis since his diagnosis came nearly a decade after he left its employment. The ALJ disagreed, explaining that pneumoconiosis is "a

---

[1] The Administration, as an agency of the United States, is not a mine "operator" that can be held liable under this regulatory scheme. 20 C.F.R. § 725.491(f).

[2] ICG also contended before the ALJ that Hamilton's claim for benefits was untimely. But it does not renew this argument on appeal.

latent and progressive disease," so "a coal miner's exposure to coal mine dust may cause, contribute to, or aggravate the progression or advancement of his pneumoconiosis before the disease is detectable." J.A., R. 10, 188 (citation modified). And because ICG offered no other affirmative evidence to disclaim its role in causing Hamilton's disability, the ALJ determined that it was liable to pay his benefits. The Benefits Review Board (the Board) affirmed, and ICG timely petitioned this court for review.

We review the ALJ's decision—not the Board's—for whether it was supported by substantial evidence. *Cent. Ohio Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 762 F.3d 483, 488 (6th Cir. 2014). Where there are legal conclusions, by either the ALJ or the Board, we review those de novo. *Id.* The substantial evidence standard merely requires sufficient evidence such that a "reasonable mind might accept [it] as adequate to support a conclusion." *Id.* (citation modified).

On appeal, ICG again argues that it is not liable because Hamilton was not diagnosed with pneumoconiosis until many years after his employment with ICG ended.[3] It contends that, because "no black lung disease was found" when the Administration first tested Hamilton after he retired from ICG, this evidence rebuts the presumption that Hamilton's pneumoconiosis arose in whole or in part from his work at ICG. Pet'r Br. at 14. But regardless of when pneumoconiosis is detected, the burden was not on Hamilton, or the government, to prove ICG caused Hamilton's disease. Rather, the burden was on ICG to prove "that the coal mine employment *played no part* in causing the total disability." *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1071 (6th Cir. 2013).

---

[3] The parties dispute whether the ALJ and Board erred in considering Hamilton's testimony as support for ICG's position. We assume ICG could rely on this testimony because it makes no difference to the outcome.

That the diagnosis came years after Hamilton's employment with ICG ended does not prove his employment with ICG played no part in causing his disability. Nor does the fact that pneumoconiosis was not found when Hamilton was tested after leaving ICG. The ALJ correctly explained that the regulations "recognize pneumoconiosis as 'a latent and progressive disease.'" J.A., R. 10, 188 (quoting 20 C.F.R. § 718.201(c)). More specifically, the regulations note that pneumoconiosis "may first become detectable only after the cessation of coal mine dust exposure." 20 C.F.R. § 718.201(c)). ICG proffered no expert testimony to dispute this point, nor to rebut the presumption on any other grounds. *Cf. Incoal*, 123 F.4th at 821–22 (collecting cases rejecting petitions for review even where operators did proffer medical expert testimony). So, while Hamilton's pneumoconiosis seemingly only manifested after additional years of exposure to coal dust, this does not preclude a determination that earlier exposure *also* contributed to the disease's development. Thus, the ALJ adequately responded to ICG's argument in noting the disease's latent and progressive nature. A "reasonable mind" could have come to the same conclusion as the ALJ, which is the full extent of our review. *Id.* at 820 (citation modified).

## CONCLUSION

We deny the petition for review.